UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

TONY RAMIREZ,                        §
                                     §
            Petitioner,              §
                                     §
v.                                   §          CIVIL NO. A-22-CV-1141-DII
                                     §
BOBBY LUMPKIN,                       §
                                     §
            Respondent.              §

## ORDER

Before the Court is Petitioner Tony Ramirez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), wherein petitioner challenges his Travis County conviction for DWI, third or more.  Also before the Court are Respondent's Answer (ECF No. 19) and Petitioner's reply (ECF No. 21).

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to federal habeas corpus relief.

## I. Background

Respondent has custody of Petitioner pursuant to a judgment and sentence out of the 460th Judicial District Court of Travis County, Texas, in cause number D-1-DC-19-207142. Petitioner was indicted for committing the third-degree felony offense of DWI, third or more. After being admonished of the charges against him and the waiver of his constitutional rights, judicially confessing, and stipulating to the evidence against him, Petitioner pleaded guilty in open court.  The trial court sentenced him to a ten-year probated sentence in accordance with the plea agreement.

The trial court signed a certification stating Petitioner had no right to appeal due to his plea bargain.  Petitioner did not appeal but he did file an application for writ of habeas corpus, raising two grounds.  Petitioner filed his application for habeas corpus relief on the form provided by the Court of Criminal Appeals for a writ application under Texas Code of Criminal Procedure Article 11.07.  However, Petitioner's memorandum of law indicated that he intended to file the writ application under Texas Code of Criminal Procedure Article 11.072.  The trial court signed the State's proposed order for filing affidavits, finding there were previously unresolved factual issues which needed to be resolved.

Counsel subsequently submitted an affidavit in response to the court's order.  The State filed proposed findings of fact and conclusions of law.  The trial court denied Petitioner's state habeas corpus application.  Petitioner objected and filed a notice of appeal.  The Third Court of Appeals abated the appeal because the clerk's record did not contain the required trial court certification of Petitioner's right of appeal.  A supplemental clerk's record was filed, and the case was reinstated.

Meanwhile, the District Clerk also sent the documents filed in the writ case to the Court of Criminal Appeals.  The Texas Court of Criminal Appeals rejected and returned the documents to the District Clerk on June 17, 2021, because Petitioner's application was under Article 11.072 and not 11.07.  However, the Court of Criminal Appeals issued a postcard on August 5, 2021, notifying the parties that the writ had been received and filed pursuant to Article 11.07.  The State filed a notification, calling the court's attention to the fact that the underlying writ was filed pursuant to Article 11.072 and Petitioner had filed his notice of appeal.  The Court of Criminal Appeals subsequently dismissed the Article 11.07 filing on September 15, 2021.

On June 30, 2022, the Third Court of Appeals affirmed the trial court's denial of Petitioner's state habeas corpus application. *See Ex parte Ramirez*, 652 S.W.3d 841 (Tex. App. – Austin 2022). Petitioner filed a late petition for discretionary review. Because Petitioner had not obtained an extension to file his petition, the Court of Criminal Appeals declined to rule on it. *Ex parte Ramirez*, PD No. 0448-22. Petitioner admits he did not place his petition for discretionary review in the mail until November 1, 2022, after the deadline to file the petition.

In his federal petition Petitioner contends (1) he received ineffective assistance of counsel when his attorney failed to investigate the legality of the traffic stop or file a motion to suppress the evidence that the police obtained as a result of the traffic stop and (2) his guilty plea was involuntary due to counsel's failure to investigate and properly advise him on the terms of the plea agreement and the facts of his case.

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. <u>Analysis</u>

A. <u>**Exhaustion and Procedural Default**</u>

Petitioner's claims are unexhausted and procedurally barred from federal habeas corpus review.

1.   <u>Exhaustion</u>

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the

merits.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner.  *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).  Thus, to properly exhaust state remedies, a Texas prisoner must present the substance of his claims to the Texas Court of Criminal Appeals in either a PDR on direct appeal or in an application for writ of habeas corpus under Texas Code of Criminal Procedure art. 11.07.[1]  *See Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

In the instant case, Petitioner did not file a direct appeal of his conviction or timely file a petition for discretionary review after the Third Court of Appeals affirmed the trial court's denial of his application under Article 11.072.  For purposes of exhausting his state court remedies, it was necessary that Petitioner present the claims presented in this federal petition to the state court via the procedure provided in Article 11.072.  While Petitioner did raise the instant allegations in his Article 11.072 application to the state trial court and on appeal, he failed to raise them in a timely petition for discretionary review to the Texas Court of Criminal Appeals.  As such, because there has been no fair presentation of Petitioner's allegations to the Texas Court of Criminal Appeals, they are unexhausted.

---

[1]     As relevant here, a habeas corpus petitioner who has been granted community supervision may satisfy the exhaustion requirement by presenting both the factual and legal substance of his claims to the state trial court in an application for a writ of habeas corpus filed under article 11.072.  *See* Tex. Code Crim. Proc. art. 11.072, § 8.  In the event the state district court denies the habeas petition, the petitioner has a right to appeal to the Texas appellate courts and to petition the Texas Court of Criminal Appeals for discretionary review.  *Ex parte Villanueva,* 252 S.W.3d 391, 395-96 (Tex. Crim. App. 2008) (discussing filing, disposition and appeals of article 11.072 writs).

2.     Procedural Default

Should this Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the Texas Court of Criminal Appeals would find the claims procedurally barred under the abuse of the writ doctrine found in Article 11.072, § 9 of the Texas Code of Criminal Procedure since Petitioner already challenged his conviction and placement on community supervision in a previous state habeas application.   Because Texas would likely bar another habeas corpus application by Petitioner regarding his original conviction and placement on community supervision, he has committed a procedural default that is sufficient to bar federal habeas corpus review.  *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (finding a procedural default occurs "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.") (citation and internal quotation marks omitted); *see also Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application).

Consequently, Petitioner is precluded from federal habeas relief on the unexhausted claims unless he can show cause for the default and resulting prejudice or demonstrate that the Court's failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004).  But Petitioner does not argue that cause and prejudice should excuse the default, nor does he demonstrate that the Court's denial of the claims will result in a "fundamental miscarriage of justice."  Thus, circuit precedent compels the denial of Petitioner's unexhausted claims as procedurally defaulted.

B.    <u>**Alternative Merits Analysis**</u>

Even assuming Petitioner had properly exhausted his allegations in the state court, he still fails to demonstrate his entitlement to federal habeas corpus relief.

According to the Third Court of Appeals, Petitioner was charged with the felony offense of driving while intoxicated with two or more prior convictions, and the indictment alleged that he had prior convictions for driving while intoxicated. *See* Tex. Penal Code §§ 49.04, .09(b). The police report and other accompanying documents stated that the police responded to a 911 call by a witness who reported that a person had sideswiped his car but did not stop, and the witness provided a description of the vehicle and its license plate number and followed the vehicle until the police arrived. After observing a vehicle matching the description given by the witness, the police initiated a traffic stop and identified Petitioner as the driver. During their interaction with Petitioner, the police noticed that he smelled like alcohol, was swaying, had glassy eyes, and mumbled. The officers performed field-sobriety tests, and Petitioner displayed sustained nystagmus and lack of smooth pursuit during the horizontal-gaze-nystagmus test, displayed six indicators of intoxication during the walk-and-turn test, and had difficulty following instructions. The officers also found an open beer can in the center console that had been partially consumed and found another beer can on the floorboard, and Petitioner admitted to drinking two beers. A preliminary breath test showed a blood-alcohol concentration of 0.162.  *Ex parte Ramirez*, 652 S.W.3d 841 (Tex. App. – Austin 2022).

The appellate court addressed Petitioner's claims of ineffective assistance in relation to the voluntariness of Petitioner's guilty plea and found that Petitioner was properly admonished by the court as well as his attorney, that his attorney advised him not to plead guilty, but Petitioner insisted on doing so anyway.  Specifically, the court stated:

After being charged, Ramirez agreed to plead guilty to the offense under the terms of a plea-bargain agreement in which the State agreed to recommend that Ramirez be sentenced to ten years' imprisonment but placed on community supervision for ten years. The plea paperwork shows that Ramirez signed the agreement, and the plea agreement specified that he was pleading guilty to the charged offense, set out the punishment range for the third-degree felony, discussed how the punishment recommendation was not binding on the trial court, mentioned that he would be allowed to withdraw his plea if the trial court rejected the agreement, and stated that he would have to get the trial court's permission to appeal any matter that had not already been raised in a motion if the trial court accepts the agreement. The plea paperwork also specifies that Ramirez understood the nature of the charge, the terms of the plea agreement, the admonishments in the agreement, and the consequences of entering a guilty plea. Further, the paperwork relates that Ramirez knew that he had the right to a trial by jury, the right to confront and cross-examine witnesses, and the right to remain silent and states that he was "freely, knowingly, and voluntarily" waiving those and other rights, confessing to committing the charged offense, and entering his guilty plea. Ramirez's appointed trial attorney signed the portion of the agreement stating that he carefully reviewed the agreement with Ramirez and that Ramirez is mentally competent, understands the admonishments, is aware of the consequences of entering his plea, and is "freely, voluntarily, knowingly and intelligently entering his ... plea of guilty, waiver, stipulation and judicial confession." However, Ramirez's attorney also wrote and signed a statement on the agreement explaining that "Ramirez is entering this plea against the advice of counsel."

During the plea hearing, the trial court explained the charge and set out the applicable punishment range, and Ramirez stated that he understood and did not have any questions. The trial court then discussed the terms of the plea agreement, including Ramirez's being placed on community supervision for ten years, and Ramirez responded that he understood the terms of the agreement. Further, Ramirez explained that he did not have a history of mental health issues. Ramirez then pleaded guilty and related that no one was forcing him to plead guilty or promising him anything in exchange for his plea, that he had gone over the plea agreement with his attorney and signed it, and that he had no questions about the agreement. The trial court determined that Ramirez entered his plea freely and voluntarily.

Following this exchange, Ramirez's trial attorney questioned Ramirez about the plea agreement and the events leading up to it, and Ramirez stated that his attorney spoke with him about the plea paperwork, advised him not to enter a guilty plea, and informed him that his decision to plead guilty could affect his release on parole in another case. Ramirez also agreed that his current trial attorney had replaced his previous attorney, that his trial attorney had not had an opportunity to review the discovery in the case, and that he had not revealed to his trial attorney what his previous attorneys had done in the case. Ramirez then explained that even though his trial attorney recommended not pleading guilty

and had not had an opportunity to review the case, he still wanted to move forward with his guilty plea. In response to questions by the trial court, Ramirez acknowledged that his guilty plea could result in his parole being revoked and in his being sent back to prison. At the end of the hearing, the trial court accepted Ramirez's plea, found him guilty of the charged offense, and imposed a sentence consistent with the plea agreement.

*Id.* at 844-45.

The appellate court determined that Petitioner's claims against his trial counsel in relation to his guilty plea were without merit and his guilty plea was voluntary.  The court stated:

In his second issue, Ramirez argues that his guilty plea was involuntary. As support, Ramirez contends that his attorney provided ineffective assistance by failing to prepare a trial defense and failing to document what discovery had been provided before the plea hearing. Relatedly, Ramirez asserts that the evidence failed to establish a valid basis for the traffic stop and his arrest. For these reasons, Ramirez insists that his guilty plea could not have been voluntarily given.

"In the context of a claim that the defendant's plea is involuntary due to ineffective assistance of counsel, the defendant must show (1) that counsel's advice was outside the range of competency demanded of attorneys in criminal cases and (2) that, but for counsel's erroneous advice, the defendant would not have pleaded guilty and would instead have gone to trial." *Arreola v. State*, 207 S.W.3d 387, 391-92 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As discussed previously, Ramirez's attorney recommended that Ramirez not plead guilty because of the potential consequences to his release on parole and because his recently appointed attorney had not yet had an opportunity to review the discovery in the case; however, Ramirez elected to plead guilty anyway. For the reasons discussed in the previous issue, we must conclude that Ramirez has failed to establish that his trial attorney's performance was outside the range of competent representation in criminal cases. *See Stano*, 921 F.2d at 1152; *Acosta*, 160 S.W.3d at 211.

Moreover, as discussed previously, the signed plea paperwork showed that Ramirez was admonished regarding, among other things, the charged offense, the punishment range for the offense, the fact that the State's punishment recommendation was not binding, and the requirement that the trial court give permission to appeal any matter not previously raised by written motion. *See* Tex. Code Crim. Proc. art. 26.13 (setting out certain admonishments that must be given before trial court may accept guilty plea and explaining that admonishments may be given "either orally or in writing"). Moreover, the plea paperwork stated that Ramirez understood the terms of the plea agreement, the consequences of entering his plea, and the admonishments, and the paperwork documented that Ramirez was voluntarily, knowingly, and freely waiving his rights, confessing, and

entering his guilty plea. Further, the paperwork reflected that Ramirez's trial attorney went over the agreement with Ramirez and that Ramirez was mentally competent.

Similarly, before accepting Ramirez's plea, the trial court concluded that Ramirez freely and voluntarily entered his plea after verifying that Ramirez understood the nature of the alleged offense and the accompanying punishment range, understood the terms of the plea agreement, did not have a history of mental-health issues, went over the terms of the agreement with his attorney before signing it, and had no questions about the plea agreement. *See Davison v. State*, 405 S.W.3d 682, 686, 687 (Tex. Crim. App. 2013) (explaining that if record "affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied"); *see also Guzman v. State*, No. 03-02-00040-CR, 2002 WL 1988376, at *2 (Tex. App.—Austin Aug. 30, 2002, no pet.) (op., not designated for publication) (concluding that record "affirmatively reflects that appellant ... entered his guilty plea voluntarily and understandingly").

For these reasons, we cannot conclude that the trial court abused its discretion by failing to grant habeas relief on the ground that Ramirez's guilty plea was involuntary and, therefore, overrule his second issue on appeal.

*Id*. at 848-49.

Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state court's factual findings.  Nor does he demonstrate that the state court's determination was contrary to, or involved an unreasonable application of clearly established federal law or that it was an unreasonable determination of the facts based on the evidence in the record.  A state court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence.  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

Here, the state court entered lengthy findings and conclusions on Petitioner's claims. Petitioner has not shown that the state court's denial of his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  Consequently, Petitioner's habeas corpus petition is denied.

10

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits:  The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds.  *Id*.  In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack,* 529 U.S. at 484).  In other words, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason, but also makes a substantial showing of the denial of a constitutional right.  The Court is authorized to address the propriety of granting a COA *sua sponte*.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).

11

After thoroughly reviewing the record and applicable law, this Court concludes that reasonable jurists would agree Petitioner's claims for habeas relief do not satisfy the standard for obtaining a COA. Petitioner has failed to make a substantial showing of the denial of a federal right or demonstrate that reasonable jurists could debate whether his petition should be resolved in a different manner. Accordingly, a COA will not issue.

## V. Conclusion and Order

After careful consideration, the Court concludes that Petitioner's claims are unexhausted and procedurally barred from federal habeas review. Even if Petitioner's claims had been properly exhausted during Petitioner's state habeas proceedings, Petitioner failed to establish that the state habeas court's rejection of his claims was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings.

It is therefore **ORDERED** that Petitioner Tony Ramirez's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

It is further **ORDERED** that a certificate of appealability is **DENIED.**

**SIGNED** this 23rd day of August 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE